UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MICHAEL HILL,<br><br>          Petitioner,<br><br>                              v.<br><br>MICHAEL MARTEL,[1] Acting Warden of<br>San Quentin State Prison,<br><br>          Respondent. | Case Number 4-94-cv-641-CW<br><br><u>DEATH-PENALTY CASE</u><br><br>ORDER REGARDING COMPETENCY<br>EVALUATIONS |

The Court must determine whether Petitioner is competent to assist in his federal habeas proceedings.  The Court has reviewed the briefs and psychological evaluations.  The Court orders as follows.

I

In <u>Rohan v. Woodford</u>, the Court of Appeals for the Ninth Circuit held that a condemned prisoner "has a statutory right to competence in his federal habeas proceedings."  334 F.3d 803, 817 (9th Cir. 2003).  "[W]here an incompetent capital habeas

---

[1] Michael Martel is automatically substituted for Vince Cullen as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

1  petitioner raises claims that could benefit from his ability to
2  communicate rationally," federal habeas proceedings "must be
3  stayed until [the petitioner] is competent." <u>Id.</u> at 819.  The
4  "relevant question" to determine competence in the federal habeas
5  context is "whether [the petitioner] now has the capacity to
6  understand his position and to communicate rationally with
7  counsel." <u>Id.</u>

8                                  II

9       In the present action, the Court found that there was
10 "substantial evidence" that Petitioner suffered from delusions
11 that rendered him incompetent.  <u>Hill v. Ayers</u>, No. 4-94-cv-641-
12 CW, 2008 WL 683422, at *1 (N.D. Cal.).  Accordingly, the Court
13 directed that Petitioner "be examined by mental-health experts to
14 determine his competence." <u>Id.</u> at *2.

15      Petitioner's expert, Dr. Karen Franklin, interviewed
16 Petitioner on November 12, 2008, and issued a forensic
17 psychological evaluation of Petitioner shortly thereafter.  (Doc.
18 No. 286.)  Dr. Franklin determined that Petitioner met the
19 diagnostic criteria for Delusional Disorder (Persecutory and
20 Grandiose Types).  (<u>Id.</u> at 8); <u>see also</u> Am. Psychiatric Ass'n,
21 <u>Diagnostic and Statistical Manual of Mental Disorders:  DSM-IV-TR</u>
22 (4th ed. text rev. 2000).  Some of Petitioner's delusions were
23 relatively innocuous, such as his beliefs that Oprah Winfrey was
24 his girlfriend, that he had won the Nobel Peace Prize, and that
25 he owned the Bank of Fat Michael Hill, with 800 branches. (Doc.
26 No. 286 at 7.)  However, many of his
27                delusional beliefs are inextricably
                  intertwined with his current legal case.  He
28                believes that he has won his appeal and been
                  pardoned by the governor.  At the present

> time, he holds this belief with an intense,
> unshakable degree of conviction.
> Furthermore, although he states that he could
> set aside this knowledge and continue to work
> with his attorneys on an appeal, the basis
> for appeal that he focuses on is not
> rational. Rather, it is part of his
> delusional belief system — that his attorney
> was intentionally working for the
> prosecution, concealing exculpatory evidence,
> and ignoring his successful direct appeal.

(Id. at 10.)  In light of "the centrality and intensity of his

delusional beliefs," Dr. Franklin opined that Petitioner was

incompetent "due to his mental disorder."  (Id.)  However, she

concluded by

> recommend[ing] a followup evaluation to
> determine whether his delusional belief
> system has subsided or become encapsulated to
> the point that he is competent to rationally
> assist his attorney in his appeal.
> Delusional Disorder often waxes and wanes
> over time, and indeed this has occurred with
> [Petitioner] in the past. [Petitioner] could
> regain his competency without a complete
> disappearance of his persecutory and
> grandiose delusions, so long as these beliefs
> subside in intensity and centrality such that
> he recovers a factual understanding of his
> case and a rational ability to assist his
> attorney on his own behalf.

(Id. at 12.)

    The Court subsequently issued an Order Setting Procedures

for Competency Evaluation.  (Doc. No. 295.)  Pursuant to that

order, Respondent's expert, Dr. Paul Good, interviewed Petitioner

on August 18, 2010.  (Doc. No. 299 at 3; Docs. Nos. 302-03.)  Dr.

Good issued his report on October 14, 2010.  (Doc. No. 299.)

    During their interview, Petitioner told Dr. Good "that Oprah

was not his girlfriend, that he was not a Nobel Peace Prize

winner, and that there was no [B]ank of Michael Hill with 800

branches," and Petitioner even laughed "in acknowledgment of the

1  absurdity of these ideas." (<u>Id.</u> at 8.)  However, Petitioner

2  refused to discuss his legal matters in any significant way or

3  even to answer many of the questions posed by Dr. Good despite

4  the efforts of Petitioner's counsel to have him do so.[2] (<u>Id.</u> at

5  7, 10, 11.)  Petitioner did indicate that he continued to believe

6  that "he was lied to by his attorneys," (<u>id.</u> at 10), but not

7  "that his attorney is conspiring with the prosecution, concealing

8  exculpatory evidence or ignoring his successful appeal," (<u>id.</u> at

9  12).

10      Dr. Good believed that Petitioner's refusal to discuss

11  "issues which were a matter of public record, and on which his

12  attorney gave him freedom to respond . . . seemed irrational."

13  (<u>Id.</u>; <u>see also</u> <u>id.</u> at 12-13 (Petitioner's "resistance to

14  discussing certain issues with me, even after his attorney

15  assured him that it would not jeopardize his appeal, may suggest

16  a substrate of paranoia.").)  Dr. Good's "sense was that

17  [Petitioner] still has paranoid suspicions and that these could

18  become problematic under periods of stress.  [His] capacity to

19  make fine distinctions is limited and his judgment is adequate

20  but fragile." (<u>Id.</u> at 7-8; <u>see also</u> <u>id.</u> at 11 ("a residue of

21  paranoia lingered in his mind").)

22      Dr. Good found that "it appears that [Petitioner's]

23  Delusional disorder is in remission." (<u>Id.</u> at 12.)  Dr. Good

24  stated, "At this point, I do not believe [Petitioner's]

25  Delusional disorder in remission is substantially affecting his

26

27      [2] Pursuant to the Court's Order Setting Procedures for Competency
28  Evaluation, (Doc. No. 295 at 3), one of Petitioner's attorneys was
    available on site during Dr. Good's interview to consult with
    Petitioner.

1    capacity." (<u>Id.</u> (quotation marks omitted).)  Although Dr. Good

2    was not completely confident in his findings, he opined that

3    Petitioner had regained his competency.  "However," Dr. Good

4    concluded, "his competency will remain fragile." (<u>Id.</u> at 14.)

5    Indeed,

6              As Dr. Franklin pointed out in her report,
             Delusional disorders can wax and wane, and
7              thus it is hard to know how [Petitioner] will
             fare going forward. [Petitioner] is still
8              vulnerable to a decompensation in which his
             delusional ideas hijack his thinking
9              processes and again make him psychotic.  In
             such a case, his mental disorder would
10             substantially undermine his competency.

11   (<u>Id.</u> at 13.)

12                               III

13       It is undisputed, and the Court finds, that Petitioner was

14   incompetent when Dr. Franklin interviewed him in 2008.  It is

15   also undisputed, and the Court finds, that Petitioner's condition

16   improved significantly by the time Dr. Good interviewed him in

17   2010.  Indeed, Petitioner may well have regained his competency

18   by 2010.  Of significant import in this regard is Dr. Good's

19   finding that Petitioner no longer held at least some of the

20   delusional beliefs that Dr. Franklin described as "inextricably

21   intertwined with his current legal case," such as the beliefs

22   that Petitioner's attorney conspired with the prosecution,

23   concealed exculpatory evidence, and ignored his successful

24   appeal.  Thus, there is substantial evidence that Petitioner is

25   now competent.

26       Yet substantial evidence of Petitioner's competency is not

27   necessarily sufficient to establish that Petitioner has in fact

28   regained his competency.  <u>Cf.</u> <u>Hill</u>, 2008 WL 683422, at *2 ("Of

course, the [substantial] evidence that suggests that Petitioner may be incompetent is insufficient to establish that Petitioner is in fact incompetent."). Thus, like Dr. Good, the Court cannot state with a great degree of confidence that Petitioner has regained his competency. This is because Petitioner's refusal to discuss his legal issues with Dr. Good in any significant way — apparently as a result of his continuing paranoia — prevented Dr. Good from gaining sufficient insight into Petitioner's understanding of his position. But Petitioner's understanding of his position is central to any determination of his competency. As Petitioner's counsel notes, the Court should have before it clearer evidence regarding "whether Petitioner is able to generally identify the claims that he is making, and whether he is able to discuss the general categories of information . . . that are necessary for him to communicate to his counsel." (Doc. No. 305 at 10–11.)

However, Petitioner's counsel's suggestion of further discussion between Petitioner and Dr. Good to attempt to develop sufficient information, (id. at 10), is not well taken. Dr. Good already has made valiant efforts — with Petitioner's counsel's assistance — in that regard, yet he was unable to do so. It seems more likely that Petitioner's own expert, Dr. Franklin, might succeed, as it does not appear that Petitioner's paranoia necessarily extends to Dr. Franklin. Accordingly, Petitioner's counsel may arrange for Dr. Franklin to examine Petitioner to develop additional evidence that would assist the Court in

determining Petitioner's competency.[3]  Petitioner's counsel may

also submit additional evidence, such as medical records as well

as appropriate declarations, under seal if necessary, regarding

their own interactions with Petitioner.  See Nash, 581 F.3d at

1058 ("habeas counsel has filed a sealed declaration outlining

her own difficulties in communicating with" the petitioner); (see

also Doc. No. 306 at 4 ("[R]espondent can[]not help but note the

absence of any assertion that [] Petitioner is not presently

rationally communicating with his attorney or is unable to assist

counsel in the preparation of his Traverse.")).  However, if

Petitioner's counsel choose not to do so, for whatever reason,

the Court will conclude based on the current state of the record

that Petitioner is now competent.  In that event, Petitioner's

counsel should notify the Court of any material change in

Petitioner's condition that may indicate that he again becomes

incompetent.[4]

---

[3] Respondent correctly points out that Petitioner elected not to
have Dr. Franklin examine Petitioner following the examination by Dr.
Good.  (Doc. No. 306 at 3, 4.)  Respondent argues that this "decision
seems a clear indication of counsel's satisfaction with the
sufficiency of the record."  (Id.)  However, this Court's Order
Setting Procedures for Competency Examination authorized
contemporaneous examinations by Drs. Good and Franklin, (Doc. No. 295
at 3; see also id. at 6), not, as Respondent claims, a later
examination by Dr. Franklin "to cure any of the alleged deficiencies
in the assessments for competency used by the State's experts," (Doc.
No. 306 at 3.)  Moreover, the Court specifically ordered that
Petitioner "shall be permitted to object in this Court to the scope of
the examination conducted [by Dr. Good], prior to any decision by this
Court on the question of his present competence."  (Doc. No. 295 at
5.)

[4] The Court is mindful of one of Petitioner's attorney's
unavailability as set forth in the Notice of Unavailability, (Doc. No.
308), as well as both of Petitioner's attorneys' obligations in
Johnson v. Martel, No. 3-98-cv-4043-SI, and it will take these
considerations into account in scheduling matters in the instant
action.

IV

Accordingly, and good cause therefor appearing, within sixty days of the entry of present order, Petitioner shall file a statement indicating whether Dr. Franklin will reëxamine Petitioner. Any such examination shall be conducted within thirty days of the filing of such statement, subject to counsel's availability and pursuant to the Court's prior Order Setting Procedures for Competency Examination, (Doc. No. 295). Petitioner's counsel shall file Dr. Franklin's evaluation and any additional declarations or other evidence no later than thirty days from the date of her evaluation. If Petitioner does not choose to arrange for a further evaluation by Dr. Franklin, the Court will rule on Petitioner's current competency based on the materials submitted.

IT IS SO ORDERED.

DATED: _____4/21/2011_____

CLAUDIA WILKEN
United States District Judge